1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MHHC WARRANTY AND SERVICES INC., | Case No. 3:25-cv-05478-TMC |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DENYING MOTION FOR FEES |
| v. | |
| CONSUMER PRIORITY SERVICE CORP. et al., | |
| Defendant. | |

Before the Court is Defendants' motion to compel arbitration of Plaintiff MHHC

Warranty and Services Inc. ("MHHC")'s claims and stay or dismiss this case. Dkt. 6. Because

the parties agreed to an arbitration clause that covers all of MHHC's claims against all

Defendants, the Court GRANTS Defendants' motion to compel arbitration and the case is

STAYED pending the parties' arbitration of this matter. The Court DENIES Defendants' motion

for fees pursuant to Rule 11 and RCW 4.84.185.

/

/

## I.    BACKGROUND[1]

MHHC is a Washington corporation that administers extended warranty and service contract programs. Dkt. 1 ¶ 5. Consumer Priority Service Corp. ("CPS") is a New York corporation that sells extended warranty and service plans for consumer products, and Max Zalta and Larry Heffez are senior executives at CPS. *Id*. ¶¶ 6–8. On March 25, 2019, MHHC and CPS entered into a Reseller Agreement (the "Agreement") under which CPS was authorized to sell warranty products backed by MHHC. *Id.* ¶ 10. While selling these programs, CPS was permitted to use MHHC's "trademarks, licenses, warranty, and insurance credentials only within the scope of MHHC-approved programs." *Id*. ¶ 11. CPS could not sell warranty plans without approval by MHHC and was required to pay MHHC any sales revenue it collected from MHHC programs. *Id*.

MHHC notified CPS it was terminating the agreement on December 29, 2024, effective April 5, 2025. *Id.* ¶ 12. CPS did not contest the termination notice, and the Agreement expired on April 5, 2025. *Id*. After termination of the Agreement, CPS allegedly:

- marketed, sold, and administered extended warranty products under MHHC's name and credentials without MHHC's consent;

- held itself out as a representative or partner of MHHC;

- used MHHC's name, logos, and insurance certificate;

- exploited MHHC's coverage under regulatory licenses to lend legitimacy to its warranty sales;

---

[1] "In reviewing motions to compel arbitration . . . a court must consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Herrera v. Cathay Pacific Airways Limited*, 94 F.4th 1083, 1085 (9th Cir. 2024) (citation modified). The Court assumes the allegations in the complaint to be true. *Id.*

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DENYING MOTION FOR FEES - 2

- issued new warranty products under the guise of MHHC's licensed programs, unapproved by MHHC; and

- failed to obtain regulatory approval for the warranty products that it sold under MHHC's name.

Dkt. 1 ¶¶ 14–17. MHHC also alleges that, both during and after termination, CPS wrongfully withheld "the vast majority (in most cases 100%) of the revenue" from sales of MHHC-backed warranties. *Id*. ¶ 18. MHHC's claims include: (1) Civil RICO pursuant to 18 U.S.C. § 1962(c); (2) civil RICO conspiracy pursuant to 18 U.S.C. § 1962(d); (3) breach of contract; (4) fraudulent concealment and misrepresentation; (5) unjust enrichment; and (6) violations of state warranty, insurance, and consumer protection laws. Dkt at 1 ¶¶ 26–59.

On July 15, 2025, CPS filed a motion to compel arbitration of MHHC's claims and dismiss or stay the action pending the outcome of the arbitration. Dkt. 6. CPS contends that MHHC entered into a valid agreement to arbitrate under the Federal Arbitration Act ("FAA"). Dkt. 6 at 8. CPS cites the following provision from the Agreement:

**15    Arbitration and Choice of Law**

> This Agreement shall be interpreted under the laws of the State of Washington. Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled in Thurston County, Washington [. . .] by arbitration in accordance with the rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator may be entered in any court having authority [. . .]

Dkt. 6 at 2 (quoting Dkt. 7-1 at 11). In its motion, CPS also asks the Court to dismiss Zalta and Heffez for lack of personal jurisdiction and grant CPS fees pursuant to Rule 11 and RCW 4.84.185. *Id*. at 10–16.

In response, MHHC argues: (1) that MHHC was fraudulently induced into signing the Agreement because CPS was already abusing MHHC's credentials and concealing unapproved

1   sales "at contract formation"; (2) public policy interests make the contract unenforceable; and

2   (3) MHHC's statutory and tort claims are independent of the contract and fall outside the

3   arbitration provision. Dkt. 13 at 6–8.[2]

## II.     LEGAL STANDARD

The FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A

party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written

agreement for arbitration may petition any [appropriate] United States district court . . . for an

order directing that such arbitration proceed in the manner provided for in such agreement." 9

U.S.C. § 4. "A party seeking to compel arbitration has the burden under the FAA to show (1) the

existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to

arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d

1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir.

2008)).

As to the former, the Court must make the threshold determination that a valid contract

was formed before ordering arbitration. *See Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217

(9th Cir. 2008). Courts apply state contract law to determine whether the parties formed a valid

agreement to arbitrate. *Lowden*, 512 F.3d at 1217 (citing *First Options of Chi., Inc. v. Kaplan*,

514 U.S. 938, 944 (1995)). Defendants assert, and MHHC does not contest, that Washington

contract law applies. Dkt. 6 at 4; Dkts. 13, 18-1. In Washington, "[a]rbitration agreements stand

---

[2] MHHC filed its response three days after the August 5, 2025, deadline. Dkt. 13; LCR 7(d)(4).
MHHC did not explain the late filing until August 15, 2025, arguing in its surreply that the
lateness was due to "Plaintiff's counsel being overseas at the time of the deadline [and]
encountering technical difficulties" constituting excusable neglect. Dkt. 18-1 at 1–2. Even if the
Court considered MHHC's arguments in its late response, however, they fail for the reasons
stated in this Order.

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DENYING MOTION
FOR FEES - 4

on equal footing with other contracts." *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 47, 470 P.3d 486 (2020) (citations omitted). And "mutual assent is required for the formation of a valid contract. It is essential to the formation of a contract that the parties manifest to each other their mutual assent to the same bargain at the same time." *Id*. at 48 (citation modified).

### III.    DISCUSSION

**A.    Motion to Compel Arbitration**

>      *1.    The arbitration agreement was validly formed between MHHC and CPS.*

The formation of an arbitration agreement depends on mutual assent to "the same bargain at the same time." *Burnett*, 196 Wn.2d at 48 (citation modified). "Mutual assent is gleaned from outward manifestations and circumstances surrounding the transaction." *Id.* at 50. Here, the Agreement contains signatures from both Max Zalta, CEO of CPS, and an individual noted as the President and CEO of MHHC. Dkt. 7-1 at 11. These signatures sit directly below, and on the same page as, the arbitration clause detailed above. *Id*.

MHHC asserts the arbitration clause was the result of fraudulent inducement—that CPS "concealed, at contract formation, that it was already selling unapproved [extended warranty programs], leveraging MHHC's credentials, and operating without required authority in multiple states." Dkt. 13 at 6. MHHC further claims "the record shows fraudulent inducement," *id.* at 2, and that the arbitration clause was "held out as a liability shield for a pre-existing scheme." *Id*. at 6. But MHHC has neither pointed to such record evidence nor explained how arbitration would shield CPS from liability. MHHC's complaint does not appear to allege fraudulent inducement, and to the contrary it claims that CPS's misconduct began at "the inception of the [Agreement]." Dkt. 1 ¶ 14. MHHC has not demonstrated fraudulent inducement, and the Court finds MHHC is bound by the arbitration agreement.

1

2.    *The arbitration agreement applies to Zalta and Heffez.*

2

Because the FAA does not "alter background principles of state contract law," a non-

3

signatory may compel arbitration "if so dictated by the ordinary principles of contract and

4

agency." *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831–32 (9th Cir. 2022) (citations

5

omitted). Under Washington law, non-signatory agents may generally enforce arbitration clauses

6

signed by their principal employer. *See McClure v. Davis Wright Tremaine*, 77 Wn. App. 312,

7

316, 890 P.2d 466 (1995) ("[Plaintiff] does not dispute [defendant's] contention that agents can

8

enforce arbitration agreements made by their principles."); *All for Kidz, Inc. v. Around the World*

9

*Yoyo Ent. Co.*, No. C13-2001RAJ, 2014 WL 1870821, at *3 (W.D. Wash. May 8, 2014)

10

("Although no Washington court has squarely decided the issue, the court is convinced that

11

Washington law permits the [e]mployee [d]efendants to invoke the settlement agreement's

12

arbitration clause as agents of [defendant].")."). Arbitration is appropriate where claims against the

13

principal and agent are "based on the same facts" and "inherently inseparable." *Loyola v. Am.*

14

*Credit Acceptance LLC*, No. 2:19-CV-00002-SMJ, 2019 WL 1601362, at *8 (E.D. Wash. Apr.

15

15, 2019) (quoting *Wiese v. Cach, LLC*, 189 Wn. App. 466, 482, 358 P.3d 1213 (2015)).

16

MHHC agreed to an arbitration clause covering "[a]ny controversy or claim arising out of

17

or relating to" the Agreement. Dkt. 7-1 at 11. This language is "broader than language covering

18

only claims 'arising out' of a contract." *McClure*, 77 Wn. App. at 314. MHHC now attempts to

19

exclude Zalta and Heffez from arbitration because they are being sued "[not] for breach of [the

20

Agreement], but for their independent torts and statutory violations." Dkt. 13 at 7. Those claims,

21

however, stem from Zalta and Heffez's actions as CPS's agents and are "intertwined with the

22

contract providing for arbitration[.]" *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1047 (9th

23

Cir. 2009) (citation omitted).

24

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DENYING MOTION
FOR FEES - 6

For example, MHHC alleges that Zalta and Heffez knowingly "shave[d] warranty policy proceeds" that were due to MHHC *pursuant to the terms of the contract*. Dkt. 1 at 5, 11. MHHC further alleges that Heffez "coordinated with sales agents and dealers, instructing them that CPS 'has everything handled' with MHHC so that they would continue selling the plans [after termination.]" Dkt. 1 at 19. "A plaintiff cannot 'avoid an otherwise valid arbitration provision merely by casting its complaint in tort[.]'" *Blanchat v. Smash Franchise Partners, LLC*, No. 2:20-CV-0380-TOR, 2020 WL 7364978, at *4 (E.D. Wash. Dec. 15, 2020) (quoting *Kroll v. Doctor's Assocs.*, 3 F.3d 1167, 1170 (7th Cir. 1993)). A broad arbitration clause "embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id*. (quoting *JJ Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988)). Thus, Zalta and Heffez may benefit from the arbitration clause here.

### 3.    *MHHC's claims fall within the arbitration agreement.*

MHHC argues that its statutory and tort claims against CPS would exist without the contract and are therefore not subject to arbitration. Dkt. 13 at 7 (first citing *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1130–32 (9th Cir. 2013); then citing *Mundi*, 555 F.3d at 1046–47). As discussed above, this argument fails because all statutory and tort claims arise out of or relate to the Agreement—namely, that Defendants violated the Agreement or continued to use MHHC's licenses or other resources after Defendants' permission to do so under the Agreement expired. Dkt. 1 ¶¶ 27–38, 57–59.

MHHC also argues that claims "involv[ing] the public interest and potential impact of consumers" are uniquely subject to public policy concerns and, therefore, should not be addressed in a private arbitral proceeding. Dkt. 18-1 at 4; Dkt 13 at 7–8. The Supreme Court has consistently held, however, that public policy interests *support* binding parties to their agreements to arbitrate. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DENYING MOTION FOR FEES - 7

(describing that the FAA embraces a "liberal federal policy favoring arbitration") (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The Court has upheld such agreements even in cases concerning consumer protection, employment, or other areas with similar public policy concerns. *See, e.g.*, *id.* at 340–43 (holding that the FAA "pre-empts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable"); *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 662 (2022) (rejecting California's prohibition on arbitration of employment claims); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532–33 (2012) (rejecting West Virginia's prohibition on arbitration of wrongful-death claims). MHHC has cited no authority demonstrating that its claims should be treated differently.

The Agreement contains an arbitration provision that encompasses the parties and claims here. The Court grants Defendants' motion to compel arbitration. Dkt. 6. The Court will stay these proceedings pending resolution of the parties' arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (when a federal court finds a dispute subject to arbitration and a party has requested a stay of the court proceeding pending arbitration, the FAA compels the court to stay the proceeding).

**B.      Motion to Dismiss for Lack of Personal Jurisdiction**

Zalta and Heffez also moved to dismiss this case for a lack of personal jurisdiction. Dkt. 6 at 8 (citing Fed. R. Civ. P. 12(b)(2)). Since this Court has already agreed with Defendants that the parties' Agreement requires the claims against Zalta and Heffez be brought in arbitration, it need not address whether it could exercise personal jurisdiction over the claims against Zalta and Heffez in this forum.

1

2

3

4

**C.      Motion for Fees Under Rule 11 and RCW 4.84.185**

Finally, Defendants argue that the Court should award the fees and costs associated with bringing their motion to compel because MHHC's suit here was frivolous. Dkt. 6 at 14–15 (first citing Fed. R. Civ. P. 11; then citing RCW 4.84.185).[3] Both arguments fail.

First, Defendants' motion for sanctions under Rule 11 fails because Defendants did not comply with Rule 11's safe harbor provision requiring them to serve a motion for sanctions on MHHC at least 21 days before filing the motion with the Court. Fed. R. Civ. P. 11(c)(2); *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) (explaining that the procedural requirements of Rule 11's safe harbor are "mandatory") (quoting *Barber v. Miller*, 146 F.3d 707, 710–11 (9th Cir. 1998)). Nor did Defendants comply with Rule 11's requirement that "a motion for sanctions must be made separately from any other motion." *Olive v. Robinson*, No. 220CV00356JLRBAT, 2021 WL 2810042, at *2 (W.D. Wash. June 11, 2021), *report and recommendation adopted*, No. C20-0356JLR-BAT, 2021 WL 2809985 (W.D. Wash. July 6, 2021) (quoting Fed. R. Civ. P. 11(c)(2)).

Second, Defendants' motion for fees pursuant to RCW 4.84.185 fails because recovery under this statute only becomes available "after a voluntary or involuntary order of dismissal, order on summary judgment, final judgment after trial, or other final order terminating the action as to the prevailing party." Any argument for fees under RCW 4.84.185 is therefore premature because the Court has not issued such an order. *See Olive*, 2021 WL 2810042, at *3.

---

[3] Defendants also cite Washington's Civil Rule 11, which does not include a safe harbor provision, as an independent basis for fees. Dkt. 6 at 14–15. Because "CR 11 was modeled after and is substantially similar to" the federal Rule 11, the Court finds CR 11 is procedural and preempted by Rule 11 pursuant to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). *See Vorhees v. Esurance Ins. Servs., Inc.*, No. 2:23-CV-00420-RAJ, 2024 WL 3069977, at *8 n.2 (W.D. Wash. June 20, 2024), *aff'd*, No. 24-4512, 2025 WL 1682180 (9th Cir. June 16, 2025); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 52–53 (1991) (fee statutes are generally substantive if tied to the outcome of the litigation, but procedural if based on a litigant's bad-faith conduct).

ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DENYING MOTION FOR FEES - 9

1

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS CPS's motion to compel arbitration and DENIES CPS's motion for fees pursuant to Rule 11 and RCW 4.84.185. Dkt. 6. This case is STAYED pending the completion of arbitration proceedings. The parties are ORDERED to file a joint status report by March 26, 2026, or within 14 days of completing arbitration, whichever comes first.

Dated this 26th day of September, 2025.

Tiffany M. Cartwright
United States District Judge